**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------------------------------- X

LAWRENCE ZUCKER, on Behalf of Himself **05 11 8 3 1 NMG**
and all Others Similarly Situated,

　　　　　　Plaintiff, **MAGISTRATE JUDGE** Dein

　　　　　　　　　　　　　　　　　　Civil Action No.

　　　-against-

　　　　　　　　　　　　　　　　**CLASS ACTION COMPLAINT**

FEDERATED SHAREHOLDER SERVICES
COMPANY, JOHN F. DONAHUE, J.
CHRISTOPHER DONAHUE, LAWRENCE D.
ELLIS, THOMAS G. BIGLEY, JOHN T.
CONROY, JR., NICHOLAS P.
CONSTANTAKIS, JOHN F. CUNNINGHAM,
PETER E. MADDEN, CHARLES F.
MANSFIELD, JR., JOHN E. MURRAY, JR.,
MARJORIE P. SMUTS, JOHN S. WALSH and
FEDERATED SECURITIES CORP.,
　　　　　　　　　　Defendants,

---------------------------------------------------------------- :
　　　　　　　　　　　　　　　　　　　X

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED ___
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK_____
DATE_____

　　　　　　Plaintiff, by his attorneys, Zimmerman, Levi & Korsinsky, LLP, alleges

upon personal knowledge as to himself and his own acts, upon review of defendants'

filings with the Securities and Exchange Commission and upon information and belief as

to all other matters, the following:

## NATURE OF THE CASE

　　　　　　1.　　Plaintiff brings this action on behalf of himself and all present and

former holders of shares of the Federated Kaufmann Fund (the "Fund") K Class shares

from April 23, 2001.  The lawsuit names the trustees of the Fund: John F. Donahue, J.

Christopher Donahue, Lawrence D. Ellis, Thomas G. Bigley, John T. Conroy, Jr., Nicholas

P. Constantakis, John F. Cunningham, Peter E. Madden, Charles F. Mansfield, Jr., John E.

Murray, Jr., Marjorie P. Smuts and John S. Walsh (the "Trustees"), Federated Shareholder

Services Company ("FSSC"), the transfer agent and shareholder services provider for the Fund, and Federated Securities Corp. ("FSC" or "Distributor"), the distributor and principal underwriter of the Fund (hereinafter collectively "Defendants"), for overcharging the K Class shareholders of the Fund for distribution and various other services.

2.    Although the K Class has been closed to new investors since its inception on April 23, 2001, the Fund continues to charge shareholders of K Class shares fees, under the guise of Rule 12b-1 of the Investment Company Act of 1940, 17 C.F.R. § 270.12b-1 ("Rule 12b-1" or "12b-1 fees"), that are purportedly used for distribution related services even though K Class shares have not been marketed or distributed to new investors and such fees bear absolutely no reasonable relationship to the services rendered.

3.    In addition to the so-called distribution fees charged, Defendants also charge the K Class shareholders a slew of other unconscionable and duplicative fees that bear no reasonable relation to the services actually rendered to the Fund's shareholders.

4.    This lawsuit seeks to recover these excessive fees and to enjoin Defendants from continuing to overcharge the K Class shareholders going forward.

## JURISDICTION AND VENUE

5.    The claims asserted herein arise as a result of Defendants' breach of their fiduciary duties under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35 (the "Investment Company Act") and common law.

6.    This Court has jurisdiction over the subject matter of this action pursuant to Section 36(b)(5) of the Investment Company Act. This Court has pendent jurisdiction over claims premised on state law.

2

7. Venue is proper in this district because many of the acts and injuries alleged in this Complaint occurred within this District and defendant Federated Shareholder Services Company is domiciled in this District.

## PARTIES

8. Plaintiff Lawrence Zucker is a holder of K Class shares, and has been a holder of such shares at all times relevant to this lawsuit.

9. The Federated Kaufmann Fund is a registered investment company under the Investment Company Act and is a diversified portfolio of Federated Equity, a Massachusetts business trust. On April 20, 2001, the Federated Equity Fund acquired the Kaufmann Fund and formed the Federated Kaufmann Fund. The Federated Kaufmann Fund is organized using four share classes – Class A, Class B and Class C shares are designated for new investors while all previous Kaufmann Fund shareholders own K Class shares. The Federated Kaufman Fund is also referred to as the "Fund" in this Complaint.

10. Defendant FSSC is an affiliate of the advisor of the Fund and is based in Boston Massachusetts. FSSC receives fees from the Fund in exchange for providing certain shareholder servicing and transfer agency services.

11. Defendant John F. Donahue is the Chairman of the Federated Fund Complex, Chairman and Director of Federated Investors, Inc. and a Trustee of the Fund.

12. Defendant J. Christopher Donahue is Principal Executive and President of the Federated Fund Complex and a Trustee of the Fund.

13. Defendant Lawrence D. Ellis M.D. is a Trustee of the Fund.

14. Defendant Thomas G. Bigley is a Trustee of the Fund.

15. Defendant John T. Conroy, Jr. is a Trustee of the Fund.

3

16.    Defendant Nicholas P. Constantakis is a Trustee of the Fund.

17.    Defendant John F. Cunningham is a Trustee of the Fund.

18.    Defendant Peter E. Madden is a Trustee of the Fund.

19.    Defendant Charles F. Mansfield, Jr. is a Trustee of the Fund.

20.    Defendant John E. Murray, Jr., is a Trustee of the Fund.

21.    Defendant Marjorie P. Smuts is a Trustee of the Fund.

22.    Defendant John S. Walsh is a Trustee of the Fund.

23.    Defendant FSC, is a Pennsylvania corporation and the distributor

and principal underwriter of the Fund. FSC is an affiliate of the advisor of the Fund.

## FACTS

24.    In April 2001, the Federated Kaufmann Fund was formed as the result of a merger between the Federated Equity Fund and the Kaufmann Fund. Existing investors in the Kaufmann Fund were given K Class shares; new investors in the Federated Kaufmann Fund may purchase either Class A, B or C shares. Each class of shares bears its own sales charges, 12b-1 fees, and other fees that are separate and distinct from the fees charged for the other classes.

25.    New investors cannot purchase K Class shares. Therefore, K Class shares are not marketed and/or distributed to any investors. Existing K Class shareholders, however, are allowed to purchase additional K Class shares without incurring a sales charge. For the fiscal year ending October 31, 2004, the net asset value of outstanding K Class shares was $3,534,720,467.

4

26.    K Class shareholders are assessed certain expenses of the Fund

directly. The Annual Shareholder Report for the year ending October 31, 2004 gives K

Class shareholders a formula for estimating each shareholder's expense burden:

> As a shareholder of the Fund, **you incur** two types of costs: (1) transactions costs,
> including sales charges (loads) on purchase or redemption payments; and
> redemption/exchange fees; and (2) ongoing costs, including management fees; to
> the extent applicable, distribution (12b-1) fees and/or shareholder services fees;
> and other Fund expenses.

\*\*\*

> **ACTUAL EXPENSES**
> The first section of the table below provides information about actual account
> values and actual expenses. You may use the information in this section, together
> with the amount you invested, to *estimate* the expenses that **you incurred** over the
> period. Simply divide your account value by $1,000 (for example, an $8,600
> account value divided by $1,000 = 8.6), then multiply the result by the number
> in the first section under the heading entitled "Expenses Paid During Period" to
> estimate the expenses attributable to your investment during this period.

27.    K Class shareholders have been paying a variety of fees that are

excessive and not reasonably related to the services provided, as described below.

28.    For example, even though K Class shares have never been marketed

or distributed to new investors, K Class shareholders have nevertheless been assessed a so-

called "Distribution Services Fee," under the guise of Rule 12b-1, purportedly for expenses

incurred in connection with promoting, marketing and distributing K Class shares.

29.    For the year ending October 31, 2004, K Class shareholders were

charged a "Distribution Services Fee" of $6,468,374, paid directly to Defendant FSC.

30.    Given that the K Class is closed to new investors and the Fund does

not solicit new investors to purchase K Class shares, there is absolutely no justification for

compelling the K Class shareholders to pay a Distribution Services Fee when no

distribution is taking place.

31.    Certainly, there exists no rational basis for **increasing** the Distribution Services Fee charged to the K Class shareholders. Yet this is exactly what has occurred: shareholders of K Class shares paid a 72% greater Distribution Services Fee for the year ending October 31, 2004 as compared to the prior year period despite the fact that K Class shares have not been marketed or distributed to new investors.

32.    The Distribution Services Fee therefore bears absolutely no correlation to any increase in promotion, marketing, distribution or administrative expenses incurred by the Fund. Certainly, the non-existent distribution services of the Fund's K Class shares did not increase by 72% during this period so as to warrant the increase of this bogus fee.

33.    According to the 12b-1 distribution plan adopted by Defendants on February 12, 2004 for the K Class shares, the Distribution Services Fee (i.e., 12b-1 fees) may only be used to:

> finance activities of Federated Securities Corp. (*"FSC"*) principally intended to result in the sale of Shares to include: (a) providing incentives to financial institutions … to sell Shares and; (b) advertising and marketing of Shares to include preparing, printing and distributing prospectuses and sales literature to prospective shareholders and with Financial Institutions. The Plan is also designed to cover the costs of administrative services performed in connection with the sale of Shares, but are not limited to shareholder services, recordkeeping services and educational services, as well as the costs of implementing and operating the Plan. (Emphasis Added)

34.    Considering that the K Class shares are not being marketed or distributed to new investors, there is no basis to charge K Class shareholders a Distribution Services Fee to provide "incentives to financial institutions" to sell K Class shares or to otherwise market the shares to "prospective shareholders."

6

35.    The only remaining purpose for which the Distribution Services Fee could possibly be used without violating the 12b-1 plan is to provide basic shareholder services and bookkeeping services.    However, pursuant to the 12b-1 plan, such bookkeeping services must be "principally intended to result in," or "performed in connection with," the sale of K Class shares – which is unlikely considering the K Class has been closed to new investors since April 2001.

36.    Even if some relationship between these 12b-1 fees and the sale of shares could be established, the Distribution Services Fee amounting to $6.46 million for basic bookkeeping services is nevertheless unreasonable.

37.    Upon information and belief, FSC gives a portion of the Distribution Services Fee collected from shareholders to certain broker-dealers, or fund supermarkets, that make the K Class shares available to their customer base.    However, because the K Class is closed to new investors, the Fund receives no benefit from access to new customers, which is the primary reason for listing shares on a broker-dealer's distribution platform.

38.    The only possible benefit these fund supermarkets can provide to the Fund is basic bookkeeping services for existing K Class shareholders (but only if such services are "performed in connection with" the sale of K Class shares as required by the 12b-1 plan).    This includes facilitating the purchase or sale of K Class shares held by customers of the fund supermarkets, maintaining transaction and account records, and furnishing tax information.    Aside from these basic bookkeeping services, the Fund receives absolutely no benefit from being listed on a fund supermarket's distribution platform because it is closed to new investors.

7

39.    Upon information and belief, the Trustees have placed the interests of the Fund's advisor and Distributor above those of the K Class shareholders by failing to terminate the distribution agreements between the Fund and the fund supermarkets/broker-dealers.

40.    For example, upon information and belief, the Fund has a distribution agreement with Charles Schwab & Co., Inc. ("Schwab") to list its shares on Schwab's electronic distribution platform (i.e., fund supermarket).

41.    Other than the basic bookkeeping services provided by Schwab, the Fund receives no benefit for listing its shares on Schwab's distribution platform. In fact, as of December 30, 2004, Schwab held only 90,793,442 K Class shares as compared to approximately 109,098,668 K Class shares on behalf of its customers on April 25, 2001. Thus, no distribution benefits accrued as a result of listing the Fund's shares on Schwab's distribution platform.

42.    Yet, upon information and belief, the Trustees have failed to terminate distribution agreements such as the one with Schwab, which are terminable at will, even though no marketing costs to attract new investors or to cover the cost of distributions to new investors have been incurred since April 2001.

43.    Rule 12b-1 requires the Trustees to review on a quarterly basis the expenses incurred by the Fund to determine whether such expenses are reasonably related to the actual services provided. Furthermore, Rule 12b-1 requires that any agreement entered into by the Fund pursuant to the 12b-1 Plan must be terminable on no more than sixty days notice. Because the Distribution Service Fee, part of which goes to pay

8

Schwab, bears no reasonable relation to the services provided, such fee must either be reduced substantially or altogether eliminated.

44.    Upon information and belief, FSC pays Schwab an annual fee of 40 basis points of the asset value of K Class shares held by Schwab on behalf of its customers. In exchange for this fee, the only benefit received by the Fund from Schwab is some basic bookkeeping services.

45.    The K Class shares are also listed on the distribution platform of E*Trade Financial Corp. ("E*Trade"), which runs a fund supermarket similar to Schwab's. FSC pays a portion of the Distribution Services Fee collected from shareholders to E*Trade for bookkeeping services presumably provided by E*Trade to its customers who hold K Class shares. Here too, because the K Class is closed to new investors, the Fund receives no benefit from E*Trade's distribution platform other than minimal bookkeeping services.

46.    Remarkably, for customers that purchase K Class shares on E*Trade's platform, E*Trade reimburses one-half of the Distribution Services Fee received from the Fund. The mere fact that E*Trade can reimburse half of the Distribution Service Fee it receives clearly indicates that the bookkeeping fees being paid to E*Trade are excessive.

47.    Moreover, the $6,468,374 Distribution Services Fee purportedly used to pay for services provided to K Class shareholders is duplicative of the "Shareholder Servicing Fee" that is also charged to the K Class shareholders. The Fund's prospectus describes the Shareholder Servicing Fee as payment for "services to shareholders and to maintain shareholder accounts."

9

48.    For the year ending October 31, 2004, FSSC charged K Class shareholders a Shareholder Services Fee of $8,824,042 in addition to the $6,468,374 Distribution Services Fee ostensibly for providing the same services to K Class shareholders. The Distribution Services Fee and the Shareholder Services Fee paid by the K Class shareholders amount to $15,292,416, or 48 basis points of the net asset value (as of October 31, 2004) of the K Class. This amount grossly exceeds the market rate for such basic shareholder services.

49.    The fee gouging of the K Class shareholders does not end there, however. The K Class shareholders are also charged a fee for transfer agency (that, according to the Fund's public filings, also includes maintaining K Class shareholder records as well as handling certain shareholder requests) and dividend disbursing services (hereinafter collectively "Transfer Agency Fees") that are also paid to FSSC by the K Class shareholders. For the year ending October 31, 2004, K Class shareholders paid Transfer Agency Fees of $5,102,229, or another 14 basis points of the net asset value of the K Class.

50.    In addition to the Transfer Agency Fee, any K Class shareholders that redeemed shares were assessed a "Redemption Fee" in the amount of another 20 basis points, purportedly used to pay for "transfer agent fees, postage, printing telephone and related employment costs" associated with K Class share redemptions. For the year ended October 31, 2004, the "Redemption Fee" charged to redeeming K Class shareholders amounted to $631,121.

51.    In sum, for the year ending October 31, 2004, K Class shareholders paid a Distribution Service Fee, a Shareholder Services Fee, a Transfer Agency Fee and a

10

Redemption Fee (collectively "Excess Fees) totaling $21,025,766. All these fees compute to a staggering 59 basis points of the K Class net asset value (as of October 31, 2004).

52.    The Fund could not have incurred $21,025,766 in expenses for basic bookkeeping and transfer agency services because this amount grossly exceeds the prevailing market rates for such services.

53.    According to a Form NSAR-B filed by the Kaufmann Fund for the period ending December 31, 2000 ("Kaufmann NSAR-B"), there were 159,856 shareholder accounts holding shares in the Kaufmann Fund. Given that the Kaufmann Fund merged into the Federated Equity Fund less than four months later, and since that time, no new investors were permitted to purchase K Class shares, the number of shareholder accounts holding K Class shares has likely remained constant, or even decreased, since April 2001.

54.    Based on the number of shareholder accounts remaining constant at approximately 159,856, for the year ending October 31, 2004, each K Class shareholder has paid over $131 per account for basic shareholder and transfer agency services – a truly staggering sum.[1]

55.    The prevailing market rate for such basic bookkeeping services is approximately $17 per account, or about 90% less than the K Class shareholders currently pay.

---

[1]    The Kaufmann NSAR-B states that as of December 31, 2000, Schwab and National Financial Services held approximately 21% of the outstanding Fund shares between them. If these shares were held in omnibus accounts on behalf of customers, then the actual number of K Class shareholders may be more than reported by the Fund. Even assuming that the actual number of K Class shareholders is 20% greater than the reported amount, (accounting for the shares held by Schwab and National Financial Services in omnibus accounts), or approximately 200,000, the K Class shareholders are still paying about $105 per account for basic shareholder and transfer agency services.

11

56.     Had Defendants conducted a competitive bidding process and engaged a third-party to provide shareholder and transfer agency services at competitive rates instead of funneling substantially all of the Excess Fees to FSC and FSSC (who are both affiliates of the adviser), the K Class shareholders would have saved at least $17.8 million for the year ending October 31, 2004 alone.[2]

57.     Defendants have therefore breached the fiduciary duties owed to the K Class shareholders by grossly overcharging for basic shareholder and transfer agency services.

58.     Moreover, had the Defendants fulfilled their fiduciary duties to the K Class shareholders since April 2001, the K Class shareholders would have been spared substantially more excessive and unreasonable fees. Specifically for the years ending October 31, 2003, October 31, 2002 and October 31, 2001, the K Class shareholders paid $16,170,958, $17,292,294 and $15,195,161, respectively, in Excess Fees. Had K Class shareholders been charged market rates for these same services, they would have saved approximately $12,973,838, $14,095,174 and $11,998,041, respectively, for those three years.

59.     In total, had the Defendants fulfilled their fiduciary duties to the K Class shareholders instead of funneling the Excess Fees to affiliates of the advisor, K Class shareholders would have saved approximately $56,867,053 over the last four years.

60.     This suit seeks to recover the Excess Fees paid by the K Class shareholders during the period the Funds were closed to new investors. This suit also

---

[2]     This calculation is based on 159,856 shareholder accounts and a generous shareholder and transfer agent service fee of $20 per shareholder account. The cost saving to K Class shareholders would have been at least $17.025 million based on 200,000 shareholder accounts.

seeks to enjoin Defendants from continuing to overcharge the K Class shareholders going forward.

## COUNT I
## VIOLATION OF SECTION 36(b) OF
## THE INVESTMENT COMPANY ACT
## (AS AGAINST FSC AND FSSC)

61.     Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

62.     This Count is asserted against FSC and FSSC for their breach of fiduciary duty in their respective roles as distributor and shareholder service provider to the Fund pursuant to Section 36(b) of the Investment Company Act.

63.     As affiliates to the adviser to the Fund, FSC and FSSC had a duty to act with the highest degree of loyalty and fidelity to the Fund and the K Class shareholders.

64.     FSC and FSSC both breached their duty of loyalty by charging the Fund's shareholders a Distribution Service Fee, a Shareholder Services Fee, a Transfer Agency Fee and a Redemption Fee that lacked any reasonable relationship to the actual services rendered.

65.     By reason of their conduct described herein, FSC and FSSC have each violated Section 36(b) of the Investment Company Act.

66.     As a direct, proximate and foreseeable result of FSC's and FSSC's breach of their fiduciary duty to the K Class shareholders, plaintiff and other K Class shareholders have suffered damages.

67.    Plaintiff, on behalf of himself and all others similarly situated, by this action, seeks to recover the Excess Fees charged to the Fund's shareholders and to enjoin Defendants from continuing to overcharge these shareholders going forward.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## (AS TO ALL DEFENDANTS)

68.    Plaintiff repeats and re-alleges each allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

69.    Defendants are in a relationship of trust and confidence with the K Class shareholders and owe a duty directly to them to act with the highest degree of loyalty and fidelity. Furthermore, under Rule 12b-1, the Trustees owe a direct fiduciary duty to the K Class shareholders to assure that any expenses charged to them under Rule 12b-1 would reasonably likely benefit them.

70.    Defendants have breached the aforementioned fiduciary duties by overcharging the K Class shareholders for marketing, distribution, shareholder servicing and transfer agency services subsequent to the Fund's closure of the K Class.

71.    By reason of Defendants' misconduct, the K Class shareholders have been damaged.

72.    Plaintiff's claim pursuant to Count II is a direct claim on behalf of the K Class shareholders because plaintiff is alleging that the K Class shareholders themselves (and not the Class A, B or C shareholders, or the Fund) have been harmed by Defendants' misconduct. Furthermore, the injury to each mutual fund shareholder can be severed from the injury to any other shareholder because each shareholder has a distinct and separate amount directly and permanently subtracted from his or her shares.

14

Moreover, the injury incurred by shareholders owning K Class shares can be severed from any injury incurred by shareholders in the Fund's other classes of shares (Classes A, B and C). In other words, this Complaint alleges that only K Class shareholders suffered damages as a result of Defendants' breach of fiduciary duty – the Class A, B and C shareholders of the Fund have not suffered any damages as a result of Defendants' misconduct.

## CLASS ACTION ALLEGATIONS

73.     With respect to Count II above, plaintiff brings this case pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all present and former holders of K Class shares since April 23, 2001, exclusive of Defendants and their affiliates (the "Class").

74.     This action is properly maintainable as a class action for the following reasons:

- a.     the Class is so numerous that joinder of all members is impracticable: there are thousands of shareholders throughout the country;
- b.     questions of law and fact are common to the Class, which predominate over any questions affecting only individual members of the Class, including, *inter alia*, the following:
  - i.   whether Defendants have violated Rule 12b-1, Section 36(b), and common law fiduciary duties by charging the Fund's shareholders 12b-1 fees after it closed to new investors; and
  - ii.  whether the Class is entitled to injunctive relief and damages as a result of Defendants' wrongful conduct.

15

c.   Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of those of the other members of the Class and plaintiff has no interests that are adverse to the Class. Accordingly, plaintiff will fairly and adequately protect the interests of the Class.

d.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.


**WHEREFORE**, plaintiff demands judgment as follows:

A.   Awarding compensatory damages to the K Class shareholders against Defendants; together with pre-judgment interest at the maximum rate allowable by law;

B.   Enjoining Defendants from overcharging the K Class shareholders excessive distribution fees, shareholder servicing fees, transfer agency fees, redemption fees or any other related fees;

C.   Awarding plaintiff the costs and disbursements of this action, including reasonable allowances of fees for plaintiff's attorneys and experts; and

D.   Granting all further other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  New York, New York
         September 8, 2005

                         **BERMAN DEVALERIO PEASE**
                         **TABACCO BURT & PUCILLO**

**By:** _____
                         Jeffrey C. Block
                         Leslie R. Stern
                         One Liberty Square
                         Boston, Massachusetts 02109
                         (617) 542-8300

                         **ZIMMERMAN LEVI & KORSINSKY, LLP**
                         Eduard Korsinsky (EK 8989)
                         39 Broadway, Suite 1601
                         New York, NY 10006
                         (212) 363-7500

                         Attorneys For Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Zucker v. Federated Shareholder Services Co.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

___ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

_X_ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES ☐    NO  X

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                    YES ☐    NO  X

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES ☐    NO  ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES ☐    NO  X

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                    YES  X    NO  ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

          Eastern Division  X        Central Division  ☐        Western Division  ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

          Eastern Division  ☐        Central Division  ☐        Western Division  ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                    YES ☐    NO  ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Jeffrey C. Block, Esq., Berman DeValerio Pease Tabacco Burt & Pucillo

ADDRESS One Liberty Sq., 8th Fl., Boston, MA 02109

TELEPHONE NO. (617) 542-8300

(CategoryForm[1].wpd -5/2/05)

## EXHIBIT A

Federated Shareholder Services Company,
John F. Donahue,
J. Christopher Donahue,
Lawrence D. Ellis,
Thomas G. Bigley,
John T. Conroy, Jr.,
Nicholas P. Constantakis,
John F. Cunningham,
Peter E. Madden,
Charles F. Mansfield, Jr.,
John E. Murray, Jr.,
Marjorie P. Smuts,
John S. Walsh,
and Federated Securities Corp.,

              Defendants.

1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Lawrence Zucker

**(b)** County of Residence of First Listed Plaintiff    Queens County, NY

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Berman DeValerio Pease Tabacco Burt & Pucillo
1 Liberty Sq., 8th Fl., Boston, MA 02109 (617) 542-8300

**DEFENDANTS**

Federated Shareholder Services Co., et al.

See Attached Ex. A.

County of Residence of First Listed Defendant    Suffolk County, MA

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sec. 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35.

Brief description of cause:
The claims arise from Defendants' breach of fiduciary duties under Sec. 36(b) of the Investment Co. Act of 1940.

**VII. REQUESTED IN COMPLAINT:**

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):    JUDGE                    DOCKET NUMBER

DATE
09/08/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE